Chief Justice Robertson
delivered the Opinion of the Court.
Charles S. Todd, so.n of Thomas Todd, and son-in-law Isaac Shelby, possessed of a large estate, but indebted beyond his own means of payment, having, as may be. inferred, applied to his father-in-law for some assistance, receivedthefollowingletter, dated January 14th, 1819:—
“ My dear sir — when I wrote you last evening, I fully “intended this morning to set out for Frankfort, but, “ whether from much thought or reflection that kept me awake, or from the natural increase of the pain in my ■“ breast, I feel quite unable this morning to undertake so ■“ long a ride. My son Thomas being here, just about “ to return home, I have prevailed upon him to take your “ house in his way. I feel, my dear sir, great reluctance “ to divest myself of the whole of my Kentucky Bank '“stock; if, from my feeble and infirm state, any accident •“ may happen to me, I should leave a very helpless ’“family, who seem unwilling that I should put in jeopar- “ dy the whole of the only source from whence they ■“ could draw a daily support, in the event that times “ should change as respects money concerns. I will “ however, lend you fifty shares of my stock, without any “ of the securities you propose, or even without inter- “ est, to be returned when you rub through your difli- “ culties — which I flatter myself you will be able to do ■“ with this stock and by the sale of some of your ne- “ gotiable paper or the mortgage of some of your proper- “ ty. — If I should feel better in a few days I will still “ hold my purpose to go to Frankfort, if the weather is *504 “ ftot too hard: with my utmost wishes for your wel- “ fare, I am your affectionate friend—
Transfer of the stock — and 19 shares more.
Letters of Col. Shelby to Judge Th. Todd, and to Mrs. C. S. Todd (Shelby’s daughter) concerning the purchase of C. S. Todd’shouseand lbrtia S°- FranIt'
Conveyance (i) wifetoCokShelby, of the house (2) o'm”sfaves and some furni'tiire,'to the usé ofMrs. T. (the wife) and her children — of all which, they retain the possession.
*504 “Isaac Shelby.”
And the books of the Bank of Kentucky show that fifty shares of the stock of that bank were transferred from Isaac Shelby to Charles S. Todd, on the 19 th of' January, 1819, and that nineteen shares were in the like manner, transferred, on the 13th of July, 1819.
On the 24th of May, 1819, Shelby wrote to Thomas Todd — who, as we presume, had enclosed to him a deed of trust on the property of Charles S. Todd, as follows:—
“ Your favor of-, .with its enclosure, came to hand “ last evening. \
“ After my arrival at home, I consulted my two sons, “ Evan and Tom, on the subject of purchasing the house “ and lot of C. S. T. — having concluded myself to ad- “ vanee one half in my Bank stock; but, not having dis- “ posed of their stall-fed cattle, they cannot spare the “ money, and are unwilling to involve themselves to bor- “ row it on uncertainties: Of Course, I must decline “the purchase; for having divided my estate amongst a “ large family of children, I have not now funds to ac- “ complish the payment. I had no wish to see more “ than the negroes and a reasonable share of the furni- “ ture secured in the deed of trust for Letitia” (the wife of C. S. Todd;) “ but 1 have no objection to let it stand “ as it does, and now return it that you may or not, as “ you please, admit it to record.” But afterwards, on the 31st of the same month, May, 1819, he wrote to his daughter, the wife of C. S. Todd, as follows: — “I “ have, however, concluded to purchase your house and “ lot, and give you eight thousand dollars for it, in the “ following manner — to-wit: forty shares in the Frank- “ fort Bank, twenty shares of my Kentucky stock, and “ two thousand dollars in money, provided 1 can get your “ brother to join me, of which I have no doubt.”
On the 26th of July, 1819, C. S. Todd and wife ac-know]edged in the office of the Clerk of the Court of Appeals, a conveyance of the title to their house and soutk Frankfort, to Isaac Shelby, for the recited consideration of eight thousand dollars; and, on the next *505 day, they, by a deed of trust, in the like manner acknowledged, conveyed to him four slaves and some household furniture, to be held for her benefit and that of her children, for the expressed consideration of seven thousand dollars, acknowledged to have been received from him, by C. S. Todd; and C. S. Todd and wife have ever since continued in the possession and use of all the property included in those two deeds.
Conveyance (3) C. S.Todd and wife to John H. Todd, of several •parcels of real ‘estate, in trust) to indemnify Th. Todd for sundry specified liabilities incurred by him. as the surety o{ Charles.
‘Conveyance (4) C. S. Todd to Thomas Todd— ofEsther(aslave) and her two children — by absolute bill of sale— vendor retaining the possession; and (S) subsequent mortgage —satae to same), of the same pro - perty) upon a different consul* oration, S/-C-.
On the 4th óf August, 1819, C. S. Todd and wife conveyed to John H. Todd, sundry town lots and parcels of land in the state of Ohio; also, a house and lot and two other brick tenements and a small piecé of ground in the village of Newcastle, Kentucky, also four hundred acres of land in Madison county, Kentucky, which had been given and conveyed by Shelby to them-, on the 12th of May, 1819; and also, two hundred acres of land in Henry county, and three hundred and eighty two acres in Christian county, Kentucky — in trust to indemnify Thomas Todd, for liabilities assumed by him to the Bank of Kentucky, for C. S. Todd, and for one thousand dollars said to have been “advanced” by him, to Charles, and for being surety for him to R. M. Johnson for one thousand dollars, and to Mildred Tunstall for “between four and five hundred dollars;” and also, for “about the sum of five hundred dollars” said to have been “paid and advanced to Charles, at different times”
On the 18 th of April, 1820-, C. S» Todd made an absolute bill of sale to Thomas Todd, of a female slave named Esther, and of her two children, for the expressed consideration of five hundred and fifty dollars, “advanced and paid;” but C. S. Todd nevertheless, still retained the possession and use of the slaves; and, on the 28th of February, 1822, he executed another deed for Esther and three children, mortgaging them to Thomas Todd for five hundred dollars, said to have been paid by him to P. F. Armistead, and for four hundred and ninety five dollars, for which he was the surety of Charles to Mrs. Tunstall, and attempting to explain the absolute deed of April, 1820, as having been intended to be a mortgage for securing “sundry advances-.”
Conveyance (6) Thos. Chas, and John H. Todd and others to the Bank of Ky.— of sundry parcels ofreal estate (including those in 2nd conveyance, supra) — to secure the debt that Th. T. had assumed for Charles.
Conveyance (7) by mortgage, C. S. T. and wife to Th. T. ofseveral lots in So. Frankfort, furniture, books 8f maps.
Conveyance (8) Col. Shelby to Thos. Todd — of the house and lot (1) for $8000--$4000 of which Thos. T.returns, and also binds himself to convey the premises, to a trustee, for the use of the wife and children of C. S. T.
Will of Col. Shelby — exonerating C. S. Todd from debts due the testator.
For securing to the Bank of Kentucky the debt' which Thomas Todd had assumed for C. S Todd, they, together with John H. Todd, F. P. Blair, and J. T. Pendleton, on the 15th of December, -1821, conveyed to the Bank, in trust, the Ohio lands and town lots, the Newcastle houses and lots, and the Madison land, all of which had been before conveyed by C. S. Todd and wife to J. H. Todd, in trust for Thomas Todd; and also some land in Livingston county, Kentucky, which had been obtained by C. S. Todd from Achilles Sneed.
On the 8 th of January, 1822, for the recited consideration of “nine hundred dollars advanced by Thomas Todd “ to C. S. Todd, in lands in Livingston, since conveyed “ by the said Charles to the Bank of Kentucky,” C. S. Todd and his wife mortgaged to Thomas Todd several lots of ground in South Frankfort, and some household furniture, and books and maps.
The house and lot which had been conveyed to Shelby, in July, 1819, was conveyed by him to Thomas Todd, January 10th, 1822, for the consideration of eight thousand dollars; but Shelby returned half of that sum, in consequence, as may be reasonably inferred, of an agreement -that Thomas Todd should “secare” the house and lot to the'wife and- children of Charles S. Todd, for which purpose he afterwards, at Shelby’s request, gave a bond, as evidence of his obligation to convey the house and lot in trust, as aforesaid.
The will of Isaac Shplby, published in November, 1824, and admitted to record in November, 1826, contains the following clause:—
«Item — I hereby exonerate and discharge Charles S. “ Todd from the payment of six thousand nine hundred “ and nine dollars and ninety eight eents, and interest “from the 1st day of April, 1820, that I loaned to him, “ as by his statement of that date will appear — which “ said sum, together with one thousand dollars in cash “ and furniture which I gave to my said daughter Letitia, “ at her marriage, and the further sum of five thousand “ dollars — for which I gave my daughter Letitia a check “ on the Bank of Kentucky, a few weeks after her mar- “ riage with the said Todd, with the further sum of six *507 “ hundred dollars, which I paid her in lieu of one of the “ six negroes I gave her at her marriage, and also with the sum of four thousand dollars, which said Charles “S. Todd received for five hundred acres of land in “ Madison Gounty, which I gave to my said daughter « Letitia at her marriage, and alsd the further sum of “ forty shares of bank stock in the Bank of Kentucky — - which several sums and five valuable slaves I gave my “ said daughter Letitia, worth three thousand dollars, amounting to twenty five thousand dollars, exclusive “ of stock, farming utensils &c. &c. &c., and is more «than I have been able to give to any other of my “ daughters.”
Judge Th.Todd’s-, will.
Remad; of Th.. T. “that- he had! got from Ch. a-considerable lift1 in money.” And: Conveyance (9) —the executrix ofTh.Todd,who was his principal devisee, to Evan Shelby, without any new consid-r eration, of most of the property which Ch. S. T. had conveyed to,, and for the use of his father — to-be1 held by E. Sin bust, for the’ wife and childrens of said Ch.
The will of Thomas Todd, published in December, 1823, and recorded in February, 1826, by which he devised his whole estate, estimated by himself at seventy thousand four hundred and twenty nine dollars, to his wife and two infant children, contains the following clause: — “ I have heretofore given to my son Charles S.. “ Todd, slaves and other property, and expended and ad- « vanced considerable sums of money, which I consider « his full proportion of my estate — I therefore desire that « he shall not have any farther portion of it.”
It appears that, in 1824, Thomas Todd ' said, he had,some time in that year, “ got from Charles a considerable lift in money;” and, on the 4th of April, 1826, the executrix of Thomas Todd, without any new consideration since her testator’s death, or to herself personally, conveyed to Evan Shelby, in trust for the wife and children of C. S. Todd, the house and lot which had been conveyed by C. S. Todd and wife to Isaac Shelby, in 1819, and by the saidlsaacto the said Thomas, in 1822, as already stated, and also the two hundred acres of land in Henry county, which had, as before stated,.been conveyed by C. S. Todd, in August, 1819, to-J. H. Todd,.intrust, for indemnifying • Thomas Todd, as surety for Charles to the Bank of Kentucky; also; the three-hundred and eighty two acres in Christian, included in the same deed, for the same purpose, and also Esther and her children; and lastly, the lots in South Frankfort and household furniture which had been mortgaged by C. S.. *508 to Thomas Todd, by the deed of the 8th of January, 1-822.
Waller’s bill— object, ' ''
^need’s, adm’r com e co - com [R ts —their grqpnd of qbjecf.amt’'
The an$w,ers.
Bill'dismissedí
When.a créditos; asidethefraudalent conveyances qthercred?tora°of the same debtor, Interested In th| same debt, hays setting‘aside the deeds, may unite Ip the saiqe smt. '
To subject to the satisfaction of his debt all or some d of the- property thus conveyed and held, William S. Waller, a judgment creditor of Charles S. Todd, filed a 0jp jn chancery, on the 1st of April, 1830, against the said Todd and his wife and children, and against Evan Shelby-and the executors of Isaac Shelby, and the executrix of Thomas-Todd, and the .heirs of JohnH. Todd— alleging, among other things, that the foregoing transfers of the said property were all artfully and colorably contrived? for the purpose of defrauding, the creditors of C. S. Todd.
On-the 30th of July, 1830, the bill was amended, and ffie administrator and heirs of Achilles Sneed were associated as co-complainants, who el aim the enforcement of a mortgage which C. S. Todd had given to the said Sneed, and a decree also, for money which they had ■paid in. consequence of his having been a surety for said Todd. '
Nil the answers denied, that any of the deeds were, in-any respect, fraudulent;, and that of C. S. Todd gives a .detailed and historical statement of facts, which we shall nor further or more particularly notice,because the affirmative, allegations or suggestions of his answer cannot be evidfence-between the parties who seem to be beneficially interested in the issue of the suit.
The Circuit Court dismissed the bill; and this appeal seeks the. reversal of that decree.
Preliminary t0. a consideration of the main question itlv0^ve^- in the. record, it will be proper to determine whether, in associating Sneed’s representatives as co-complainants, there, was a misjoinder of parties, 'or of subjects-for equitable-jurisdiction. Though those parties ha¿' 110 j'°mt or common, interest in the same debt — nevertheless, if they have the. like interest in setting aside the same, conveyances, for fraud on the creditors of C; S. Todd, and have, each shown an equitable title.to a , , . ,. - , ,. r . decree subjecting the same property to the satisfaction of their respective debts, it was, so far, proper for them to unite in. the same- suit,., for effecting a common, end», *509 If, therefore, Sneed’s representatives were in a proper-condition for invoking the interposition of a Court of Equity as to the debt claimed by them to be due from C. S. Todd, in consequence of their alleged payment to his use, they had a right, to that extent, to join with Waller, whose object was, as to his judgment, the same.
A party who goes, into ch’y, to set aside the conveyances made by his debtor, as fraudulent, must, in general, show, by a judg’t, that he is a bona fide creditor, and, by an ex’on 4*c. that he has tried the legal means to get' his debt. But where a surety has paid money for his principal, ch’y has jurisdiction of his case, and he may add a prayer to set aside any fraudulent conveyance that stands in his. way; and having these rights, he. may join in the same suit with o-. thers, whose object is to impeach the conveyances.
Though two or more creditors, may unite in one suit, to set aside, the same fraudulent conveyance,. a proceeding to foreclose a mortgage, (a distinct/ matter,) though, it was made by the same debtor, cannot be joined^
But they had not even obtained a judgment against Todd; and the general rule of equity applicable to suits in chancery by creditors for setting aside fraudulent conveyances to their prejudice, is, that they must show,— first, that they have been adjudged to be bona fide creditors, and, second, that they had, in vain, tried the ordinary means for making the amount due to them. But, as a surety has a right to sue in chancery, for money which he had paid for his principal, he may, when, instead of appealing, in the first instance, to a Court of. common law, he looks altogether and exclusively to a Court of Equity, and files a bill for a decree for his money, add a prayer for an auxiliary decree, for removing obstructions fraudulently interposed to defeat or embarrass the remedial action of the Court. As, therefore, Sneed’s representatives seem to be entitled to a decree for money paid to Todd’s use, we can perceive no sufficient reason why, to avoid confusion and multiplicity of suits, they may not unite with Waller, whose debt has been established by judgment, and who has shown that he is not able to coerce it by legal remedy, and pray for a decree, not only for their debt, but for the vacation of deeds charged to be in fraud of the just claims of all the creditors of C. S. Todd.
But, as there is no connection between a foreclosure of the mortgage to Sneed, and the conveyances now sought to be set aside, or the other debts sought to be enforced, there is no sufficient ground for joining that matter; and to this extent, therefore, there was a misjoinder.
Having thus disposed of this first and minor point, we will now proceed, with all possible brevity, to consider the ultimate and more radical question presented for our revisional adjudication. And, as each of the conveyances may depend for its validity or invalidity on disr *510 tinct facts and principles, we shall consider them separately and chronologically.
Continued possession by grant- or, after an absolute conveyance of real estate, is not,perse, proof of fraud — as such possession ofmovablepropertyis. The facts and circumstances connected with the conveyance (I) of the 'house and lot, by C. S. T. to Col. S. do not, upon the whole, show a sufficient ground to set aside that deed for fraud — which is Tiee/expresumed, hut may heinf erred from facts.
First. The first conveyance in the order of time, is that of July 26th, 1819, from C. S. Todd and wife to her father, Isaac Shelby, of the house and lot in Frankfort, for the consideration of eight thousand dollars. Nothing has been made to appear respecting this deed, which can subject it to the imputation of being fraudulent in law. It exhibits no one of the legal or artificial badges which, in judgment of law, would make it fraudulent per se. The retention of possession and the continued enjoyment of the use of the property by Todd and wife, after, as before, the date of their conveyance to Shelby, is not a conclusive indicium of fraud, as it would have been had moveable property been thus used after an absolute sale of it to another. This position needs not, here, and at this day, the support of argument. And, though the use and possession by Todd and wife, after the conveyance, might, in some degree, without other proof, tend to indicate that the whole transaction was merely colorable and fictitious, yet any such deduction is, we think, repelled by other facts which appear. The letter of May the 30th, from Col. Shelby to his daughter; shows, not only that she and her husband were anxious that he should purchase the house and lot, and had proposed a sale of them to him, but also, that he had consented, and then had no doubt that he would make the purchase in the way and for the price which that letter disclosed; and the proposed price corresponds exactly with the consideration stated in the deed, which was made in less than two months after the date of the letter. The inference that he actually bought the house and lot in good faith, and for a consideration at least adequate, is fortified by the fact, that he afterwards sold and conveyed, them to Thomas Todd, for eight thousand dollars, actually received, and one half of which he undoubtedly retailed, and the fact also, that, in his will, he declared that, lunong other things, he had given to his daughter, Mrs.Todd,four thousand dollars in bank stock, which was doubtless the forty shares of stock, which he transferred to Thomas Todd, in execution, on his part,'of the agree *511 ment to divide the price of the lot equally between themselves, and have the title secured to the wife and children of C. S. Todd. The relation in which the parties stood —the necessitous condition of Todd — the admitted eventfulness of the then crisis in his affairs — the ability of Shelby to help him by a further advancement — may, altogether, conduce slightly to create a suspicion, that the consideration acknowledged in the conveyance of the house was in fact but so much given to the son-in-law, and that tire deed for the title was merely colorable, and intended to disguise the true character of the transaction, so as to secure to Todd and wife the beneficial use of the property, unannoyed and unincumbered by the demands of his creditors. And this suspicion may be strengthened by the additional fact, that the property was retained and enjoyed without rent. But, at last, and in its utmost force, it is but a suspicion, and seems to be, not only repelled, but rather rebuked, by the opposing circumstances which we have just mentioned, and by the unimpeaehed character of Isaac Shelby for candor and integrity, and by the fact also, that, according to what he declared in his last will, he could not have given, by way of advancement, eight thousand dollars, or half of that sum, at the date of the deed, or afterwards, without giving to Mrs. Todd more than what he was able or willing to give to any other of his daughters.
The fact that he did, about three years afterwards, give to her one half of the nominal price which he had paid for the property, can be made consistent with the foregoing deduction, upon rational and probable grounds, such as these: when he bought the house, he did not want it, and, not then knowing the hopelessness of C. S. Todd’s condition, as afterwards developed, he supposed that he would some day not far distant, be able to refund the sum given for the property, and keep it himself; but that, subsequently discovering the insolvent and irretrievable condition of his son-in-law, and the prospective destitution of his wife and children, and also finding that the property was not then worth eight thousand dollars, or near that sum, he resolved that, if Thomas Todd would contribute four thousand dollars, he *512 would join him and have the title secured to his daughter and her children; by which act, on his part, he was, in fact, adding but a shadow to her advancement, if, as we infer from the proof, the property was then worth but little if any thing more than four thousand dollars, which he got from Thomas Todd. But still it was right to charge her with four thousand dollars, because, we doubt not, he made the purchase-at eight thousand dollars solely for her accommodation.
A conveyance(2 ante, 504) by a grantor, who is in debt, totheuse of his wife and children, is, prima facie, void, as to his then creditors, and as to his subsequent creditors, who unite with them in a suit to set it aside. Butifsuch a deed be made, bona fide, upon a fair consideration paid, it is good: as where a man advances money to a son-in-law, and takes a conveyance of fa™pi-¡c{’) mthe use of his daughlaw’^wife^aud her children, it “ t0 a11 m‘
*512 But, waiving this remote reasoning, it is enough to repeat, that there is no sufficient evidence to authorize a judicial impeachment of this deed for fraud in fact; Such fraud' will never be presumed by a court, but may be inferred from facts which are made to appear. As such facts do not, in our opinion, appear in this 'case, as to the deed now in question, we cannot decide that it is false and fraudulent.
There is no proof — though some of the counsel seem to suppose there is — that C. S. Todd ever refunded the four thousand dollars which his father had contributed. But, if there had been such proof, it should not invalidate the title of Mrs. Todd and her children; because the four thousand dollars contributed by her father, was a sufficient consideration, and there is no ground for imputing any fraudulent purpose to him, or to her, or to her infant children.
,Second. The conveyance of the slaves and furniture by C. S. Todd and wife to Shelby, dated July 27th, 1819, and which is the next in order of time, presents a little more difficulty. As that deed conveyed, to the use of Mrs. Todd and her children, property which belonged to himself, and at a time when he was not only embarrassed with debts, but was actually insolvent, i,t should, prima facie, be deemed fraudulent as to his bona fide creditors at that time, and, if void as to such creditors, void also as to subsequent creditors, who may come in with the prior creditors.
But there is proof of an ostensible consideration of sufficient value to uphold the deed against the claims of •creditors, if that consideration was actually paid in good faith, as the price of the property conveyed in trust. *513 There is no reason to doubt that Shelby had, not long before the date of this deed, let C. S. Todd have about five thousand dollars, if not a larger sum. In -his letter of the 14th of January, 1819, he told him that he would lend him fifty shares of his stock in the Bank of Kentucky; and on the 19 th of January, 1819, fifty shares of Sh elby’s stock in that Bank were transferred to C. S. Todd, On the 13th of July, 1819, only two weeks prior to the date of the deed, Shelby transferred nineteen shares more of the same stock, making, at par value, altogether six thousand nine hundred dollars. In Shelby’s will, Todd was exonerated from the payment of six thousand, nine hundred and nine dollars, which was doubtless the true consideration of the deed, instead of the seven thousand dollars therein stated.
Facts stated from tL^Shelbyfchd and receive a deed.
to hislonSidaw an advancement that he intends ■for his daughter, upon condition, that the son-in-law conveys certain property, in trust for his wife’s use, and the conveyance will be valid; but if the money has been advanced without any such condition, it cannot be afterwards connected with, and made to uphold, as against ■the son-in-law’s creditors, a subsequent voluntary conveyance made by him, to his wife’s use.
These facts and coincidences tend to show, that the nineteen shares of Bank stock formed a part of the consideration of the deed. But whether it was a part of the consideration of this, or of the other deed for the house-and lot, is not very material; because the fifty shares of stock previously transferred, constituted a sufficient price, and was, as we infer, equivalent to the .property which was conveyed.
But did Shelby ever receive or sanction the deed of trust of the 27th of July? and, if he did, was the consideration of that deed, money which had been previously given as an advancement? The first question may be solved without much difficulty; for it is evident, that Shelby was anxious that the slaves and furniture should be eonveyed to him, in trust for his daughter, and that the deed now m question was substituted for a prior and more comprehensive one of a similar kind, which he had approved, but which was never fully and finally executed, because, as may be inferred, he preferred that it should, like the substitute, contain nothing but the negroes and furniture.
But the second question is more vexatious. Even though Shelby may have intended an advancement, and ° J J *514 nota loan, still, if he resolved to require, as a condition, that the sum to be advanced, or its equivalent in other property, should be secured to his daughter, and if the deed was made with that view, and on those terms, it should’ not be invalidated for want of an actual consideration of sufficient value. But if the money was given as an advancement, without any such requisition or condition, the sum so advanced could not afterwards, to the prejudice of creditors, be converted into a sufficient consideration to impart to the deed any other complexion than that of a voluntary conveyance to the use of the wife and "children of C. S. Todd, in fraud of his creditors.
’Examination "of • the faets and circumstances tending to show what was, in fact, the '■ Sruc consideration of the deed of trust upon'the slaves and furniture, made by C. S. T. to Col. S. to use #c., and "conclusion in fawor of itswalidity.
As to the true character of the consideration, we are not, we frankly admit, as clear as we would desire to be. 'But'we are inclined to the opinion, that the consideration was not a previous advancement, but was a loan, which was afterwards secured, in part or in whole, by 'the conveyance to the use of Shelby’s daughter and grand-children.
He was applied to for a loan — he hesitated — but finally resolved to lend. The consideration for the deed, so far as we have any positive evidence respecting it, was passed in the form of a loan, and not in that of a gift or an 'advancement. And if Shelby was, as we infer he was, a sagacious man and provident father, — apprised, as he must have been, of the embarrassed condition of his son-in-law’s affairs, and of the consequent uncertainty as to whether any further advancement, if he was even willing and able then to make one, would be enjoyed by his daughter,— he would have been disposed to resort to some proper expedient for securing the enjoyment of what he gave, or was about to give. And it is altogether probable, that such was his design when he agreed to lend money, or make an advance in the form of a loan-, and if so, the purpose being lawful and :proper, the deed is good and valid. And this we incline to think was the true ■state of the 6ase. Against this conclusion, the fact that Shelby did not mention this deed in'his will, but exonerated Todd from a debt of six thousand nine hundred and *515 nine dollars, has been urged in argument. If, at the date of the •will, Todd owed the testator that sum, there could be scarcely a doubt that the deed was voluntary, and the consideration merely ostensible; for it is almost certain, that the six thousand nine hundred and nine dollars mentioned in the will, and the expressed consideration for the deed of trust, were, in substance and in truth, the same; and consequently this alternative is presented: that is, either that Todd did not owe to Shelby the six thousand nine hundred and nine dollars, or any part of that sum, after the execution of the deed, or, if he did, •Shelby gave no'valuable consideration for the conveyance. And hence the counsel for the appellants have insisted, that Shelby, in his will, considered the six thousand nine hundred and nine dollars as a debt still due to-, him, and therefore, not intending to exact it, or,not believing that he ever could coerce it, he released it. But if Shelby knew that the deed had been made, and approved it, and was a man of truth and honest feelings* this interpretation of his will cannot be right, although it is, abstractly considered, plausible and imposing.
That he was apprised of the existence of the deed of trust, we have already suggested, as a probable deduction from facts which have been mentioned. Moreover, when he had manifested a special solicitude that the slaves and furniture should be secured, i.t is not probable that, had he. not believed that they were secured* he would have advanced money afterwards for the house, and lot, which he did not want,, and especially as Todd, was, without that advance, his debtor to. the amount of six thousand nine hundred and nine dollars (nearly the. full price of the house*) unless that debt had been extinguished by the deed for the slaves and the furniture.
Notwithstanding, the apparent literal import of the: will, therefore, we conclude that Shelby .was privy to. the deed of trust, and* of course, sanctioned it* Then, if he were a man of truth and probity* he did not mean by his will, that C. S. Todd owed him six thousand nine hundred and nine dollars; and consequently, — as his moral character is unimpeached and unquestioned* and *516 as we cannot presume that it was liable to just imputation, and more especially as his explicit and positive announcement that, if the . first deed which had been offerred, and which included other property in addition to the slaves and furniture,, should be insisted on, he would hold only the slaves and furniture for his daughter, and that C. S. Todd or his creditors should, nevertheless,, have a right to all the residue, evinced' the purity and lawfulness of his intentions, — we should, if we reasonably can, give such an interpretation to his will as may be consistent with his integrity, and with his knowledge of the fact, that the six thousand nine hundred and nine dollars had been satisfied by the deed of trust. And this can be done, without distorting or perverting the language of the will, only by supposing, as is altogether probable, that, as the deed of trust furnished no evidence that its recited consideration was the antecedent loan of six thousand nine hundred and nine dollars, and as no receipt had been given to Todd, because there was no written evidence of his indebtedness, Shelby deemed it prudent to declare his exoneration in his will, lest some difficulty might, after his own death, otherwise occur, and lest also, there might be doubt as to what he had given his daughter. And simply to announce Todd’s exoneration from the debt, was more direct and summary, than to give a detailed history of the manner in which the debt had been paid, and in which finally he had given the six thousand nine hundred and nine dollars. But, whatever should be the true construction of the will, it should not operate decisively on a deed made long before its publication.
We are, therefore, inclined to the opinion, that the deed of trust was founded on a valuable consideration, and is fair and valid. But if our minds were in equilibrio, the judgment of the Court should be the same.
Nor was Todd’s use of the property conveyed in trust, a decisive or a strong badge of fraud; for such use .and possession were perfectly consistent with the character and objects of the conveyance, and were therefore no evidence of fraud.
Decision, as to a. portion of the property conveyed.
A son conveys, several estates to- and for the use of his father, as an indemnity ag’nst. suretyships; tbefather dies, and his ex’x, who is. his principal devisee, conveys the-estates to a trustee, for the use, of the wife and, children of the son, the grantor:, her conveyance», though, in form, absolute, and for tire entire estates» can pass no other or greater interest, than the testator held, viz. a lien for the reimbursement of the-advances made by him or by his e’xx; and the equity of redemption remainingto the son, may clearly be made liable for his. debts.
Then, as to the slaves and furniture included in the deed of trust to Shelby, andas to the house and lot conveyed by C. S. Todd and wife to him, and by him to Thomas Todd, and by his executrix to Evan Shelby, in trust for the wife and children of C. S.Todd, in compliance with her testator’s bond, founded, as we have seen, on si fair and valuable consideration, the judgment of the law upon the foregoing facts and deductions, is that the appellants have failed to establish fraud, and that, therefore, as to the property thus conveyed and held, the bill was properly dismissed; for the tact that Shelby’s executors, as mere trustees, never answered, should not, in our opinion, conclude or essentially prejudice the rights of those for whom they hold, the whole beneficial interest under the deed of trust.
But we have been led to a different conclusion respecting all the other property claimed for Mrs. Todd and her children, under the conveyance by Thomas Todd’s executrix, to-Evan Shelby, in trust for them, and all of which had been- previously mortgaged by C. S. Todd, to or for the apparent use of Thomas Todd.
As Thomas Todd held, as a collateral security merely, the legal title to so much of this property as had been mortgaged to himself, and an equitable interest in that which was held by J. H. Todd, in trust for his benefit,— the conveyance by his executrix, to Evan Shelby, though absolute and without reservation on its face, could have passed, as against C. S. Todd or his bona fide creditors, no other or greater interest than that which Thomas Todd held, at the time of his death; and that was the value of his liens on the property, and these liens were, so far as the creditors of C. S. Todd were concerned, utterly worthless to any greater extent than that of the debts and liabilities actually subsisting, and for which the liens might be enforced. It is evident, therefore, that, even if any thing available passed to Mrs. Todd and her children by the deed from the executrix of Thomas Todd, the appellants have a right to the benefit of C. S. Todd’s equity of redemption; and that, therefore, in the most unfavorable view of their interest, the Circuit Court erred in dismissing their bill.
Examinationtextending to the close of the opinion) of the facts bearing upon the conveyance (3, ante 505) made by Ch. S. Todd to J. H. Todd, trustee,to indemnify Th. Todd, as surety for Ch; and of that made by Th. Todd’s ex’x, to E. Shelby, as trustee Sf c. (9, ante507)and of the will of Th. Todd: and conclusion, that if Th. Todd had paid any thing on ch’s account, for which he had a lien on those estates, he had, by his will, exonerated Ch. from the obligation to reimburse him; and the ex’x having paid nothing for Ch. there was, therefore,no consideration to uphold those conveyances, as against the creditors of Ch, and that the estates thereby conveyed, are subject to the debts due to the comp’ts in this case.
“$1000 advanced,” stated in a deed of trust, from a son to his father, as part of the consideration —presumed to be vancement1 and held, that,’ nei“1500hpa’id and advanced, at different times” — is sufficient, without further proof, as a Consideration, as against the son’s-creditors.
But they are in our opinion, entitled to more than the equity of redemption, measured according to the face of the deeds creating the liens: for we are satisfied, that Thomas Todd could not, at the time of his death, have enforced his liens to that extent, if to any extent whatever, as against the just rights of the appellants. Wo must, therefore, consider those conveyances more thoroughly.
First. The first of these, in the chronological series^ is the deed of trust to John H. Todd, for the indemnity of Thomas Todd. Though the chief object of this deed (that is, indemnity for debts assumed to- the Bank of Kentucky) was, as may be inferred, fully effectuated by. a subsequent mortgage to the- Bank of some of the same-property by Thomas Todd, C..S. Todd, J. H. Todd and. others, whereby, as we- presume,, the original liability of Thomas Todd was, at once or eventually, released, nevertheless the legal title to the tract of land in Henry county, and to the tract in Christian county, remained in J. H. Todd, for the purpose of securing “ one thousand . dollars advanced” by Thomas Todd to C. S. Todd, and “about the sum of five hundred dollars paid and advanced to Charles, at different times,” and for indemnifying Thomas Todd, as the endorser of C. ¡8. Todd, on a negotiable note- to R-. M. Johnson for one thousand dollars, and as, surety for him in a bond to Mrs. Tunstall, for “between four and five hundred dollars.” As to any one of these remaining purposes, contemplated according, to- the express provisions of the deed of trust to J.. PI. Todd, there is no other evidence than that which the deed itself may be supposed to furnish.
There being no proof that the “1000 advanced” was a. loan, and not a technical advancement, there must be at least some doubt whether it should be deemed a subsisting tod available consideration. And the true charD rv . v .t ,, , . , . acter and proper enect oi the alleged consideration of “a^0MÍ $500 Pa^ an^ advanced — at different times,” are also far from being certain, and more especially as the sutn s0 indefinitely characterised.
Presumed, that the liability of a surety has ceased, ten years and more, after he signed the obligation, when a deed of trust was made for his indemnity; and. in proofofany payment having been rarety^nTdeecr j>f trustffist.n<y agaTnst the grantor’s creditors,
, The consideragage’ from a son J,"9 faíhei'’ of' in lands since ™ort3aged” *>y the son, must be understood as a ment^that^hnd been made to the sufficientconsideration.
an^teobtíbm of sale purports main^the possession of the ¡s void’as to hia' creditors; s-tho* the vendor after-wards mortgages them to the vendee, upon a new consideration, he cannot give validity to the void sale, by explanations of the transactions in the mortgage. The parties might agree to waive the sale, and substitute the mortgage; but the proceeding would be liable to suspicion — which would be increased by any inconsistencies or incongruities in the writings.
There is no proof, or even suggestion, that Thomas Todd ever paid airy thing, or that his estate is yet liable for any thing, in consequence of his contingent liability as an endorser on the negotiable note to R. M. Johnson. The lapse of time would alone induce the presumption — were it material — that that liability has been extinguished; and the nature of the liability should induce the belief that it had been discharged before the date of his will, or of the last mortgages, and was, therefore, either extinguished by C. S. Todd, or charged in the will.
And although the liability to Mrs. Tunstall is not altogether subject to the same inference, •yet, not only is there no proof that the bond to her remains unpaid, or that' Thomas Todd ever paid it, or any part of it, but it was one of the two alleged considerations for the subsequent mortgage on Esther and her children. And no satisfactory reason clearly consistent with the rights of the appellants, appears for this double security.
Second. The mortgage of the 8th of January, 1822, on lots in South Frankfort and on books and maps and household furniture, for securing the payment of “§900 advanced” in Livingston land “since mortgaged” by L. S. Todd to the Bank of Kentucky, seems to be liable to X . an objection even more formidable. Its phraseology may, not unreasonably, be understood as importing that the land, had been given as an advancement, and after-wards mortgaged by C. S. Todd to the Bank. And, if this were the fact, there was no consideration for the mortgage of the 8th of January, 1822, which should be deemed available against the claims of the appellants.
Third. The last conveyance which remains to be considered, is the mortgage of Esther and her children, A prior absolute bill of sale of these slaves, from C. S. .Todd to Thomas Todd, however fair in fact, or in the judgment of the parties, or however valid-as between themselves, was, as to the creditors of C. S. Todd, void *520 -in judgment of law, because the actual possession and ostensible ownership were not changed, so as to correspond with the tenor and apparent effect of the contract. And this fact alone tends, in some degree, to impair, if not effectually to destroy, the effectiveness of .the subsequent mortgage. The prior absolute sale, being ab initio void as to the creditors of C. S. Todd, could not have been rendered effectual against them, by the explanations suggested in the subsequent mortgage of the same slaves, for a different consideration. But, as the bill of sale may have been only constructively fraudulent, the parties may have had a right, without any injustice to creditors, to waive it, and make a new and valid contract of sale or mortgage respecting the same property. Such new agreement however, if any such were made, would be liable to be seriously questioned.
Now the mortgage on Esther and her children does not renounce the prior absolute bill of sale, but attempts to explain and revive it, as having been intended by the parties to be a mortgage; and not only attributes to it a consideration inconsistent with that which it •recites and acknowledges, but attempts to secure a lien •on the slaves, for a sum essentially different from that described in the mortgage, as the true consideration of the bill of sale.
Those incongruities should alone greatly impair the efficacy of this mortgage; and the more especially, as ■one of the considerations which it recites,, that is, the liability to Mrs. Tunstall, had been apparently secured by the prior and still subsisting deed of trust to John H. Todd, for the indemnity of Thomas Todd, which still continued to be available to an extent which might be presumed to be sufficient for all the purposes which remained to be secured by it. Why was an absolute bill of sale for Esther and her children, thus already secured, afterwards made? and why, after that also, were the same slaves mortgaged for securing the same indemnity for which they had been conveyed in trust to J. H. Todd? The bona fide creditors of (3. S. Todd have a right to ask these questions; and such an answer as will be perfectly satisfactory and altogether consis *521 téti't with their rights, would be difficult, and has not been found in this voluminous record.
A father who has paid, and expects to pay, money for a son, may determine to secure the amount to the son’s wife and children, Sr a mortgage or deed of trust, made by the son upon his property, for that object,willbegood; andif the father’s representative after his death, convey his in-that is the property, sub l?ct t0 redemPtion, (a mere lien,) to a trusoTtlufson’Twife and children, it of’its value: that is, for the amount paid, on the son’s account, by the father or his executrix. But no such payments are to be presumed, and, against the honaf.de creditors of the son, the conveyances will be valid, only so far as there is proof of payments.
But these questions, perplexing as they may be, must be felt to be still more so, when it is considered, that the mortgage waS never enforced — that Thomas Todd, in 1824, about the date of his will, said that Charles S. Todd, had given him “a considerable lift,” about two years after the date of the mortgage, and respecting which payment there is no 'other proof in the record — and also, that the executrix of Thomas Todd, without any new consideration, either known or to be presumed, conveyed the absolute title of the same slaves and of all the other property on which her testator held apparent liens, to Evan Shelby, in trust for the wife and children of C. S. Todd. Such a lodgment, unexplained as it is, might tend to the inference, that it was the ultimate destination contemplated from the beginning of the circuitous course which the ostensible documentary title to the property has happened to take.
Such a purpose may have been perfectly fair and legal, to the extent of any bona fide liens which Thos. Todd may have taken on the property of his son, for money actually loaned to him, or paid for him;for, had Thomas Todd, for debts actually due or to become due to him from Charles, determined to secure the amount of them to the wife and children of the latter, and had the executrix of Thomas Todd, knowing that fact, or considering the will as contemplating it, conveyed only his interest, for the effectuation of his provident purpose, all might have been just and effectual, to the extent of his available claims — that is, the enforcement of his liens, as far as they may have been sustained by valuable, Subsisting, and available considerations. But these hy- , , - , , , , . , pothetical facts, have not been established, and, without evidence, cannot be presumed by this Court. Besides, Thomas Todd had no right, upon any allowable hypothesis, to withhold from the creditors of C. S. Todd the *522 entire property, and an intention to do so would hare been fraudulent. And therefore, if his executrix made the absolute conveyance, only because it was his wish that she should do so, this fact would reflect unfavorably upon the whole transaction between Thomas and C. :'1§. Todd, from the commencement to its consummation. 'The will, however, is silent-'bs to any such ulterior disposition of the property, of of afiy 'interest in it; and "this 'cif'cumstabce alone tends to show, éither that ito ' such purpose was intended, or that if it was, the law 'would not approve ft, — because the law 'is jealous of f secrecy, indirection of disguise.
""A son executes mortgages, to secure his father, for advances and .’liabilities. The • father dies, and, •‘by a will which ' purports to devise his whole estate, but says nothing of any liens on his son’s .property, leaves a large estate to his 'widow and ’ two other children, arid says f the son is to have ”iio portion, because, the testator “had 'expended. ail'd a'dva'n- ' ced for his ' b'eh'e-;,fit — donsiderable sums:” in the absence of proof of any other advance, to which the will might have referred— held, that those alluded to in the will, must he deemed to be the same for which the mortgages were made, and that the effect of the will is to reléase the son’s liability for those advances, and leave the property subject to the claims of his creditois. And. the fact that the widow, to whom and whose children, the estate was devised, did,, after the testator’s death, convey all the mortgaged property to a trustee, for the use of the wife and children af the son, without any attempt to enforce any líen «pon it — ’ tends strongly to-, support this construction. of lbe,will..
*522 But if, notwithstanding the foregoing Considerations, any thing available, as against the appellants, could hbve passed by the conveyance to 3§van Shelby, such all effect could be sustained only by the fact, that C. S. Todd was indebted to Thomas' Todd, at the time of his death, to the extent of the considerations recited in the deed of Trust and the'two mortgages, or'to the extent of some portion of them-.
And any such deduction is, we think, repelled by a proper consideration of the will of Thomas íodd, construed properly, and in vifetv of all the cirCumstanCéá which appear.
When Thomas Todd devised to his wife and to tw<3 Of his children, his whole estate, estimated by himself at more than $>70,000, and declared, as a sufficient reason for hot devising any portion of that value to his sou Charles, the fact that he had “expended and advanced,” for his benefit,'“considerable sums” which he Considered his full and equal share, we feel bound to infer, from all the circumstances, that he intended to include and to-release, as a gift to him, all that he had “expended and advanced,” and which had not been reimbursed; and that, consequently, the advances and payments of debts recited in the deed of trust and the mortgages, were embraced — more especially as there is no proof of other advances or expenditures. “Expended” imports something which had been appropriated in some other mode than that of an advancement, and something which was to be refunded; and consequently, when the number, *523 tenor and character of the liens for money thus expended and to be expended? are- considered, the inference is strong, if not conclusive, that all such expenditures were included in the will, and confirmed, as a just distributive portion to his son. Besides had not this been, the intention of the testator, it is altogether probable, that he would have been more explicit, and. would have left to his executrix no doubt or controversy, as to whether his liens were included, and were intended still to be enforced. This deduction from the will, is fortified by the fact, that the tenor of that will indicates, that the testator intended to devise his whole estate, and. that, nevertheless, he omitted to mention his liens on the estate of C. S. Todd — to whom he devised nothing more than what he had previously advanced to him and expended for him. And, if any serious doubt on this subject should still remain, it should, in our judgment, yield, when the conveyance to Evan, Shelby by the executrix and principal devisee, is properly considered; for, as she. was entitled, for herself and her infant children, to whatever remained due from 0. S. Todd, to her testator, if any thing was still due, and would have had a right to. enforce the- liens for securing it, as well as for indemnifying herself for any payment which, as executrix, she might have to make, in consequence of any of the liabilities mentioned in the deeds to her testator, there is no. reason for believing that, if she had not known that no., thing remained due from. C. S. Todd, or payable for him, she would. have conveyed to his wife and children, or for their use, the whole estate mortgaged as the only security, or that she would, by that conveyance, have endeavored to pass, what she did' not own — the absolute-title.
Why was the-will silent as- to this whole matter? We-cannot answer the question consistently with the effectiveness of the conveyance to Evan Shelby, to any greater extent than the house and lot, which the testator had covenanted to convey.
We- are thus brought to the conclusion, that the will of Thomas Todd, being, as it is, unexplained, was a quietus to C. S. Todd; and we cannot, without any fact *524 tending to authorize it, presume that the will was made with ,a .secret understanding between the testator and his executrix, that, in consequence of the release of CS.. Todd, she should make the conveyance which she did make to the use of his wife and children; nor, if such were the fact, could we admit, that any such purpose was allowable to the prejudice of the appellants. We cannot, therefore, fairly escape the conclasion, that the. wife and children, of C., S. Todd cannot sustain, against the appellants, any equitable claim to any greater extent than that of the property conveyed to Isaac Shelby, unless they may have some equity arising from the testator’s liability to Mrs. TunstalL
But their claim, even to that extent, cannot, in our opinion, be recognized. If Thomas Todd paid that debt, it was included in. his will according to the construction we have felt, it our duty to give to that document, and was. therefore charged to C. S. Todd, as a part of bis portion of his father’s estate- If C. S. Todd paid the debt, or shall ever pay it, it cannot enure to the benefit of his wife and children, under the conveyance, to Evan Shelby. But, in the absence of any circumstance to, the contrary, the presumption from all the facts,,is strong and almost,if not altogether, irresistible, that even if, contrary to probability, that debt yet remains unpaid, it is not to be paid by the executrix of Thomas. Todd, for the benefit of the wife and children of the principal debtor.; and,, consequently, it appears, that they have no available, right as against the-appellants, to any of the, property included in the conveyance to Evan Shelby, excepting the house and lot in South Frankfort, which has been already more particularly described-
Wherefore, with the exceptions which have been stated in the foregoing opinion, it seems to this Court, that the appellants, have an equitable right to subject to the' satisfaction of their demands, the property claimed in this, suit, for the wife and children of C. S. Todd.
Wherefore, upon a full consideration of all the facts, of the case, it is decreed and ordered, that the decree of the Circuit Court be reversed, and the.’ cause reman *525 ded, with instructions to render a decree in favor of the appellants, pari passu and according to the principles of this opinion; and-to dismiss, without prejudice, so much of the bill as seeks a foreclosure of the mortgage to Achilles Sneed.